[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15198
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cv-00120-VEH

JAMES GRAVELING,
LORI GRAVELING,

Plaintiffs-Appellants,

versus

CASTLE MORTGAGE COMPANY, ET AL.,

Defendant,

BANK UNITED N.A.,
SIROTE & PERMUTT, PC,
GINNY RUTLEDGE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(November 9, 2015)

Before MARCUS, MARTIN and JULIE CARNES, Circuit Judges.

PER CURIAM:

James and Lori Graveling ("the Gravelings") appeal the district court's dismissal of several claims related to the foreclosure of a mortgage on property they owned. Their initial complaint alleged two counts of fraud related to their mortgage and promissory note; two counts of refusal to cease debt collecting activities in violation of the Fair Debt Collection Practices Act ("FDCPA"); one count of conducting an illegal foreclosure sale auction; and one count of wrongful foreclosure. The district court granted a motion to dismiss the Gravelings' second amended complaint as to several of the defendants. The district court also granted a motion for summary judgment in favor of the remaining defendants.

On appeal, the Gravelings assert that the district court erred in dismissing their claims against Castle Mortgage Company ("Castle"), the original holder of their mortgage, as well as BankUnited N.A., the company that ultimately foreclosed on their mortgage. They advance several arguments for this claim: (1) the copies of the note and mortgage submitted to the district court were forged; (2) the original mortgage was induced by fraud; and (3) BankUnited was not a holder in due course of their mortgage because (a) the note was securitized, (b) the assignment of the note to BankUnited was invalid, and (c) BankUnited failed to provide proper validation of the debt. They also argue that the district court abused

2

its discretion in denying their requests for a default judgment against Castle because Castle failed to timely respond to the Gravelings' first amended complaint. Finally, they argue that the district court erred in granting summary judgment to Sirote & Permutt, P.C. ("Sirote"), the law firm that represented BankUnited and its predecessor in interest Coastal States Mortgage Corporation ("Coastal") in the foreclosure proceedings, as well as Ginny Rutledge, a lawyer for Sirote, because material facts were in dispute.

The Gravelings have separately moved this Court to grant "summary disposition" against Castle with regard to their claim that they were entitled to a default judgment against Castle in the district court because Castle did not file a response brief on appeal. For the reasons set forth below, we affirm the district court's grants of partial dismissal and summary judgment, and deny the Gravelings' motion.

## I.

The Gravelings first contend that the district court erred in dismissing their claims against Castle and BankUnited. We review de novo the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, accepting all factual allegations in the complaint as true and viewing them in the light most favorable to the plaintiff. Starship Enters. of Atlanta, Inc. v. Coweta Cnty., 708 F.3d 1243, 1252 (2013).

3

However, we are not required to accept as true bare legal assertions supported by mere conclusory statements. Ashcroft v. Iqbal, 556 U.S. 662, 678, 681, 129 S. Ct. 1937, 1949, 1951 (2009). To survive a motion to dismiss, a complaint must offer more than naked assertions that the defendant acted unlawfully or a formulaic recitation of the elements of a cause of action. Id. 556 U.S. at 678, 129 S. Ct. at 1949. A complaint must contain sufficient factual allegations that, accepted as true, state a plausible claim for relief. Id.

Where an appellant makes only passing reference to an issue or raises it in a perfunctory manner without providing supporting arguments or authority, that claim is considered abandoned on appeal. Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014). Pleadings by pro se parties are held to less stringent standards than pleadings prepared by lawyers, and are construed liberally. Campbell v. Air Jam. Ltd., 760 F.3d 1165, 1168 (11th Cir. 2014). However, "this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading." Id. at 1168–69 (quotation omitted).

### A.

The Gravelings argue that the district court improperly dismissed their claims against Castle and BankUnited because the copies of the note and mortgage submitted to the district court were forged. Where the plaintiff refers to certain documents in the complaint, and those documents are central to the plaintiff's

4

claim and their authenticity is undisputed, the district court may consider those documents in resolving a motion to dismiss. See Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). We may thus examine the note and mortgage submitted by the defendants here. See id.

The Gravelings' allegations of forgery are based on claimed differences in the promissory note and mortgage documents submitted by the defendants. They did not present their claims that the mortgage and note documents were forged in their initial complaint. It was in later filings with the district court that they asserted that the mortgage and note documents submitted by the defendants involved "forgery and/or fraud" and "ha[d] clearly been altered."

The district court did not err in relying on the mortgage and promissory note documents provided by the defendants in granting their motion to dismiss. The only mortgage and note documents before the district court at the time the district court ruled on the motion to dismiss were three copies produced by the defendants, all of which were identical. Nothing on the face of the mortgage and note documents the Gravelings later provided to the court shows that the copies of the note and mortgage submitted by the defendants were forged or fraudulent.[1] Even

---

[1] On appeal, the Gravelings argue that the differences were as follows: "An endorsement signature was altered. Numbers appeared on some and not others. Recording stamps and notary signatures were on some but not others." Any differences with regard to endorsement signatures, recording stamps, and the like, are superficial and explained by the fact that the Gravelings admittedly received each of the relevant copies at different times as their note and mortgage were transferred between servicers. But even if we were to consider these more-specific alleged

5

if we consider these documents in reviewing the district court's dismissal, the Gravelings' allegations are bare legal conclusions unsupported by specific factual allegations. Such "naked assertions" are insufficient without further factual enhancement to survive a motion to dismiss. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. The district court did not err in relying on the copies of the note and mortgage submitted by the defendants in resolving the motions to dismiss.

B.

The Gravelings also argue that the district court improperly dismissed their claim against Castle because their original mortgage with Castle was induced by fraud. To state a claim of fraud under Alabama law, a plaintiff must prove that: (1) the defendant made a false representation; (2) this representation was of a material fact; (3) the plaintiff reasonably relied on the representation; and (4) the plaintiff suffered damage as a proximate consequence of the reliance. Drummond Co. v. Walter Indus., 962 So. 2d 753, 788 (Ala. 2006). In addition, a plaintiff pleading a fraud claim in federal court must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). A complaint alleging fraud must set forth: (1) precisely what statements were made; (2) the time and place of each statement and the person responsible for making the statement;

---

differences advanced for the first time on appeal, they do not create a "reasonable inference that the defendant is liable for the misconduct alleged" as would be necessary to survive a motion to dismiss. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.

(3) the content of each statement and how those statements misled the plaintiff; and

(4) what the defendants obtained as a consequence of the fraud. Ziemba v.

Cascade Intern., Inc., 256 F.3d 1194, 1202 (11th Cir. 2001).

The Gravelings assert that Castle's loan to them to purchase their house was

fraudulent because Castle "represented that they'd give [the Gravelings] a loan

from its resources, but didn't give a loan from its resources."  They argue that

"Castle did not give them a true loan" in contravention of this initial

representation, and instead "issued credit that was created 'out of thin air' by the

promissory note."  The Gravelings allege that Castle "did not loan anything" to

them because "Castle did not loan gold or silver to [the Gravelings]," it "did not

loan . . . Castle's own money," and it "did not loan Federal Reserve Notes."

The district court did not err in dismissing the Gravelings' claim of fraud

against Castle.  First, the Gravelings never stated any false representation made by

Castle with regard to their mortgage loan.  The Gravelings assert that Castle

represented to them that Castle would give them a loan to purchase their home.

The mortgage paperwork introduced by the Gravelings evidences that this loan was

actually made and "[t]he proceeds of this loan were applied to the purchase price

of the subject real estate."  This paperwork evidences that the Gravelings both

signed the document two pages prior, in recognition of this credit-based transfer

for the purchase of their home.  The Gravelings have recognized in their own

7

filings that Castle made the loan exactly as promised, and there was no false representation.

Second, the Gravelings did not plead their fraud claim against Castle with sufficient particularity as required under Federal Rule of Civil Procedure 9(b).  The Gravelings allege merely that "Castle's contract loan gave a representation that they were a lender who would give us borrowers a 'loan'" and that "[s]uch statements by Castle, however, were false."  These statements do not sufficiently set forth the precise statements made by Castle, which Castle agent made those statements, where and when those statements were made, and how those statements misled the Gravelings.  See Ziemba, 256 F.3d at 1202.

## C.

The Gravelings next argue that the district court improperly dismissed their wrongful foreclosure claims against BankUnited.  Under Alabama law, a mortgagor has a cause of action for wrongful foreclosure when "a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor," such as "for the purpose of oppressing the debtor or of enabling the creditor to acquire the property himself."  Jackson v. Wells Fargo Bank, N.A., 90 So. 3d 168, 171 (Ala. 2012) (quotations omitted).  Where there is no allegation that the power of sale was exercised for any purpose other than to secure the debt owed, a cause of action for wrongful foreclosure has not been

8

sufficiently alleged.  See Harris v. Deutsche Bank Nat'l Trust Co., 141 So. 3d 482, 491 (Ala. 2013).

The district court correctly dismissed the Gravelings' wrongful foreclosure claim against BankUnited.  The Gravelings admitted in their complaint that they stopped making the required payments on their mortgage in 2011.  They did not assert that BankUnited foreclosed on their mortgage for any purpose other than to secure the debt the Gravelings owed.  Their wrongful foreclosure claim was instead premised on the notion that BankUnited was not the holder in due course of their mortgage for three reasons.  First, they argue that the note was unenforceable because it was securitized.  Second, they allege that Castle's assignment of the note to BankUnited was invalid.  Third, they contend that BankUnited failed to provide proper validation of the debt prior to foreclosure because they did not provide the "original" version of the note and mortgage.  We discuss each of these claims in turn.

1.

First, the Gravelings allege that the note held by BankUnited was unenforceable because the note had been securitized.  They argue that "if a party securitizes a loan, they lose the rights and interest to that loan."  This argument relies entirely on an affidavit by a mortgage consultant named William McCaffrey. The Gravelings sought to introduce the affidavit and several other documents in

9

response to the defendants' motions to dismiss their claims. According to the affidavit, the Gravelings' mortgage note was securitized, and so BankUnited was not a holder in due course of their note and lacked legal standing to foreclose on the mortgage.

The defendants moved to strike several of the Gravelings' supporting documents, including McCaffrey's affidavit. BankUnited specifically argued that McCaffrey's affidavit should be struck because the Gravelings presented no foundation for its relevance or admissibility; the affidavit failed to provide a factual basis for its legal conclusions; and there was no demonstration that the affidavit was based on McCaffrey's personal knowledge. The district court granted the motion to strike the submissions as "immaterial," as the court found itself bound by the four corners of the Gravelings' complaint in resolving the motions to dismiss.

Upon motion of the opposing party, the district court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). We review a district court's evidentiary rulings for an abuse of discretion. Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir. 2002). We will not disturb the district court's decision unless it is outside the range of reasonable choices or is influenced by a mistake of law. Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1337 (11th Cir. 2005).

10

The district court did not abuse its discretion in granting the defendants' motion to strike McCaffrey's affidavit.  The validity, authenticity, and relevance of the affidavit were all in question.  Further, the affidavit was not material to the Gravelings' complaint.  See Wilchombe, 555 F.3d at 959.

Besides references to the stricken McCaffrey affidavit, the only mention of the securitization argument in the Gravelings' complaint is the allegation that "BU . . . did not possess legal STANDING necessary to initiate or conduct this foreclosure."  This "bare legal conclusion" is insufficient to create a plausible claim for relief.  Iqbal, 556 U.S. 678, 129 S. C. 1937, 1949.  The district court thus did not err in dismissing the Gravelings' complaint against BankUnited on the theory that the note was unenforceable because it had been securitized.

2.

Second, the Gravelings allege that Castle's assignment of the note to BankUnited was invalid because a notary purported to execute an assignment of the servicing rights of the Gravelings' loan from Coastal to BankUnited on August 3, 2012, but the Coastal representative did not actually sign the document until August 7, 2012.  Under Alabama law, "any person . . . who, by assignment or otherwise, becomes entitled to the money" secured by a mortgage may enforce the power of sale contained therein.  Ala. Code § 35-10-12.  A mortgage note is a negotiable instrument subject to the provisions of Alabama's Uniform Commercial

11

Code ("U.C.C."). Thomas v. Wells Fargo Bank, N.A., 116 So. 3d 226, 233 (Ala.

Ct. Civ. App. 2012). Under the Alabama U.C.C., a "person entitled to enforce" an

instrument is defined as:

> (i) the holder of the instrument, (ii) a nonholder in possession of the
> instrument who has the rights of a holder, or (iii) a person not in
> possession of the instrument who is entitled to enforce the instrument
> pursuant to Section 7-3-309 or 7-3-418(d). A person may be a person
> entitled to enforce the instrument even though the person is not the
> owner of the instrument or is in wrongful possession of the
> instrument.

Ala. Code § 7-3-301.

A person is a holder of a negotiable instrument if the person possesses an

instrument that is payable to the bearer. Id. § 7-1-201(21). A negotiable

instrument that is endorsed in blank is payable to the bearer and may be negotiated

by transfer of possession alone. Id. § 7-3-205(b). "Possession of a note payable to

order and indorsed in blank is prima facie evidence of ownership" such that its

possessor may properly conduct foreclosure proceedings. Thomas, 116 So. 3d at

233; see also Nelson v. Fed. Nat'l Mortg. Ass'n, 97 So. 3d 770, 779 (Ala. Ct. Civ.

App. 2012) (per curiam).

The Gravelings' argument misreads the document transferring servicing

rights from Coastal to BankUnited. This document shows that the interests were

assigned on August 7, 2012, and the signature was acknowledged before a notary

on August 30, 2012. Further, BankUnited possessed the Gravelings' endorsed note

12

in blank, and was therefore allowed to initiate foreclosure proceedings as the "holder" of the note under Alabama law. See Thomas, 116 So. 3d at 233. The district court did not err in dismissing the Gravelings' wrongful foreclosure claim against BankUnited based on the validity of the assignment by Coastal to BankUnited.

3.

Third, the Gravelings allege that BankUnited failed to provide proper validation of the debt prior to foreclosure, because they did not provide the Gravelings with the "original" version of the note and mortgage. Alabama's nonjudicial foreclosure statute does not require the party seeking foreclosure to produce the "original" or "wet-ink" version of the note and mortgage. See Ala. Code § 35-10-11 to -14. Alabama courts that have addressed the issue have found that a party seeking to foreclose under this statute need not produce the "original wet ink signature promissory note and mortgage" before commencing foreclosure proceedings. Douglas v. Troy Bank & Trust Co., 122 So. 3d 181, 182 (Ala. Ct. Civ. App. 2012); see also id. at 182–84; Ballentine v. Ala. Farm Credit, ACA, 138 So. 3d 1005, 1009–10 (Ala. Ct. Civ. App. 2013) (per curiam); Levins v. Deutsche Bank Trust Co. Ams., No. 13-0035, 2013 WL 308999, at *3 (S.D. Ala. Jan. 25, 2013).

In Douglas, the first Alabama case to squarely address the "original note" issue, the Alabama Court of Civil Appeals noted that states that authorize foreclosure by means other than judicial action, such as Alabama, routinely reject such "show me the note" arguments. Douglas, 122 So. 3d at 183. It highlighted an unpublished decision of this Court rejecting such a challenge under Alabama's nonjudicial foreclosure statute. Id. at 184 (citing Farkas v. SunTrust Mortg., Inc., 447 Fed. App'x 972 (11th Cir. 2011) (per curiam) (unpublished)). In light of those precedents, the Alabama court concluded that the plaintiffs' "show me the note" argument was "suspect," and refused to impose a requirement that the mortgagee produce the original note in order to foreclose. Id. at 184 (noting that the plaintiffs failed to cite any authority in which a nonjudicial foreclosure was invalidated because the mortgagee failed to produce the original documentation evidencing the underlying debt and security for its repayment). Other Alabama cases addressing this issue have followed the same logic. See, e.g., Ballentine, 138 So. 3d at 1009–10; Levins, 2013 WL 308999 at *3.

The district court did not err in dismissing the Gravelings' wrongful foreclosure claim against BankUnited. In response to the Gravelings' requests for a validation of their loan, Coastal and BankUnited's foreclosure counsel sent the Gravelings multiple copies of their note. The Gravelings' argument that BankUnited was required to produce the original, "wet-ink" note in order to

14

validate the mortgage has no basis in Alabama law.  See, e.g., Douglas, 122 So. 3d at 182–84.

## II.

The Gravelings also contend that the district court abused its discretion in denying their requests for a default judgment against Castle because Castle did not timely respond to the Gravelings' first amended complaint.  We review the denial of a motion for a default judgment for an abuse of discretion.  Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1316 (11th Cir. 2002).  A default judgment is appropriate when a defendant fails to defend against a complaint.  Fed. R. Civ. P. 55(a).  A default is warranted only when there is a sufficient basis in the pleadings for the judgment entered—that is, when the factual allegations of the complaint state a claim for relief.  Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam).  The requisite factual showing for a default judgment is similar to the factual showing necessary to survive a motion to dismiss for failure to state a claim.  Id.  Default judgments are generally disfavored due to our "strong policy of determining cases on their merits."  Id. at 1244–45.  We consider default judgments to be a "drastic remedy" that should be used "sparingly" and only "in extreme situations" where no other forms of relief are available.  Mitchell, 294 F.3d at 1316–17 (quotation omitted).

15

The district court did not abuse its discretion in refusing the Gravelings' request for a default judgment against Castle. The Gravelings mailed Castle a summons on February 28, 2013. Though Castle did not respond within the 21-day period set forward in the summons, Castle did file a motion to dismiss the Gravelings' complaint shortly thereafter on April 8, 2013. When the Gravelings amended their complaint on April 30, 2013, Castle responded promptly with a new motion to dismiss this complaint on May 5, 2013. The Gravelings have not shown that they were at all prejudiced by Castle's first belated response. See Mitchell, 294 F.3d at 1317. This showing seems unlikely: the Gravelings amended their complaint after Castle's initial belated filing, and the amended complaint—to which Castle timely moved to dismiss—was the complaint the district court eventually dismissed.

In any event, as discussed above, the Gravelings failed to state a claim against Castle. A default is only warranted if there is sufficient basis in the pleadings to support the judgment. Surtain, 789 F.3d at 1245. On these pleadings, we affirm the district court's denial of a default judgment against Castle as a proper exercise of that court's discretion, and for the same reasons, deny the Gravelings' motion for summary disposition against Castle on appeal.

III.

16

The Gravelings finally contend that the district court erred in granting summary judgment to Sirote and Rutledge on their FDCPA claim because material facts were in dispute. They argue that because they had challenged the validity of their mortgage and note, Sirote and Rutledge were required under the FDCPA to cease their debt-collection efforts until the validity of the mortgage and note was proven.

We review the district court's grant of summary judgment de novo, viewing the record and drawing all reasonable inferences in the light most favorable to the nonmoving party. Bhogaita v. Altamonte Heights Condo. Ass'n, 765 F.3d 1277, 1284 (11th Cir. 2014). Summary judgment is appropriate where the record shows that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

The FDCPA provides that "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt." 15 U.S.C. § 1692c(c). Communication is still allowed for certain limited

17

purposes such as notifying the consumer that the creditor has the ability to invoke specific remedies, or that the creditor intends to invoke such a remedy. Id. § 1692c(c)(2)–(3). If a consumer notifies the debt collector that any portion of the debt is disputed, the FDCPA requires the debt collector to cease collection activities until it provides verification of the debt to the consumer. Id. § 1692g(b).

The district court did not err in granting Sirote and Rutledge's motion for summary judgment because neither defendant violated the FDCPA. The Gravelings' FDCPA claim against Sirote and Rutledge involves a single communication: a letter dated March 12, 2012, which notified the Gravelings that their mortgage was being accelerated for a failure to pay. Sirote and Rutledge presented evidence that Coastal had twice provided proper validation of their debt to the Gravelings before Sirote sent this acceleration notice. Though the Gravelings continued to request the original note, Sirote and Rutledge were entitled to communicate with the Gravelings and resume debt collection activities because the documents sufficiently verified the debt. Furthermore, even if the Gravelings' request that the defendants cease communications was distinct from their request for debt validation, the acceleration notice was still a permissible communication because it notified the Gravelings of Coastal's intent to invoke the specific remedy of acceleration and foreclosure.

18

For these reasons, upon review of the record and consideration of the parties' briefs, we affirm.

**AFFIRMED.**